The next argued case is number 2017-62, Tadlock v. Secretary of Veterans Affairs. Mr. Harris. Mr. Hennis. Thank you, Judge Newman, and may it please the Court. My name is Carl Hennis, and I represent the appellant Howard L. Tadlock, Jr. The review process that Congress created for veterans' benefit claims is supposed to place a thumb on the scale in favor of veterans like Mr. Tadlock. But two heirs by the divided Veterans Court below turned that uniquely pro-veteran process on its head and made it harder for Mr. Tadlock to receive the disability benefits he deserves. First, the Veterans Court exceeded its authority by making a factual finding the Board had not made and by affirming the Board's decision based on that entirely new ground. Second, the Veterans Court refused to invalidate the regulation covering medically unexplained chronic multi-symptom illnesses, which directly conflicts with its authorizing statute. I'd like to begin with the first heir, which requires this Court to vacate the Veterans Court's decision with instructions to remand Mr. Tadlock's case to the Board. Counsel, as you know, by statute, the Veterans Court is required to consider the rule of prejudicial heir when evaluating Board decisions. And so, therefore, there are times where the Veterans Court permissibly may affirm a Board decision even though the Veterans Court at the same time identifies some kind of error in the Board's judgment. Can you explain to me how, under what circumstances, is it appropriate to apply that in a way that doesn't violate the Chenery Doctrine? Absolutely, Judge Chen. So, in this Court's decisions in Newhouse and Lechick, which the government principally relies on, this Court has held that when the Board decides an issue and the Veterans Court find that the Board erred, then the Veterans Court is in position to consider whether that heir is harmless on that point. So, the Veterans Court has to kind of be driving in the same lane that the Board was driving in, so to speak. But, by contrast, this Court's decisions in Hensley, Mayfield, and Winters establish that when the Veterans Court finds that the Board erred in deciding one issue, the Veterans Court cannot use harmless heir to find facts and affirm the Board on an entirely different ground that the Board had not considered. And therein lies the rub. Can you put a little more detail in your answer when you say things like the Veterans Court needs to be in the same lane as the Board's decision, and the Veterans Court can't go to a different ground than the Board's decision? As you can imagine, that kind of terminology is a little vague, and I think we need a little more precision in terms of understanding how these two principles coexist. Sure. So, I think that as far as when it's permissible, a good example is this Court's decision in Newhouse. The Veterans Court's harmless heir analysis was related to the same issue the Board decided. The Board decided the case based on notice. The Veterans Court found that it erred, but yet it also affirmed on harmless heir based on whether the Veteran had received proper notice. And in that situation, harmless heir, it's no surprise. The Veteran has fair notice of what is going to be considered by the Veterans Court. Here, by contrast, the Veterans Court weighed medical evidence that the Board had not weighed. It applied a provision the Board had not applied, and it made a dispositive medical finding the Board had not made on an issue the parties had not briefed. So, you know, whatever the line is, this case falls far outside the line. And you're putting a Veteran in a position where, you know, and Veterans are often, you know, proceeding pro se in these kind of cases, where they have to anticipate arguments that the Veterans Court may sua sponte come up with to reject their claim. I think I agree with you instinctively that there's something strange in the Veterans Court independently canvassing the record and then interpreting the record and drawing inferences from it to arrive at a particular fact finding that there were no overlapping symptoms or signs in this case. But what if the Board, in making its various findings in this particular case, had found that in interpreting all the medical evidence in the record, the Board had found that Mr. Tadlock suffered from only one condition, a single symptom? And also assume that the Board didn't key off on that fact finding to conclude that his benefits claim should be denied. But nevertheless, very clearly, undisputedly made that very fact finding. And then we had a Veterans Court that said, well, as it did here, we don't like the fact that the Board made a ruling that was based at least in part on a conclusion that Mr. Tadlock's diagnosis was not an undiagnosed diagnosis. It doesn't have to be an undiagnosed diagnosis. But nevertheless, the Board made a very clear fact finding here that there's only a single symptom in the record. And so, therefore, for that reason alone, the denial of benefits should be affirmed. Would that be appropriate? Would that be an okay application of the harmless error doctrine? Judge Shen, I think that it would depend on the circumstances, to be honest, in which the Board made that finding in that instance. Okay. Show me a circumstance where that would be okay and then a circumstance where that would not be okay. So, this Court has held that if the Board provides the complete factual predicate for the harmless error analysis, but in a different context, that that is okay. In this case, you know, a finding of one symptom without, you know, this particular overlapping signs and symptoms also wasn't at issue before the Board. No one had, you know, really raised it in this kind of non- I understand that. Please stick with the hypothetical. Absolutely. So, in this case, I mean, if the Board just made an offhanded comment about, you know, a symptom without showing that it had, you know, necessarily focused on that particular issue and that particular issue is not before the Board, in that instance, I think that affirming on that ground would not be proper and it would be proper to send back for the Board to make the relevant fact-finding in the first instance. And that, you know, I mean, coming back to your original question, really, you know, on where the line is between when can the Veterans Court affirm on harmless error and when can it not, the government cites no case from this court allowing the Veterans Court to use harmless error to reach an entirely new ground that the Board had not considered or to make dispositive medical findings. And I think that that's another, you know, to the extent Newhouse and Lechick are relevant and we think they are distinguishable on the, you know, whether the Veterans Court could reach harmless error there. Those are also notice violations which require no special expertise. By contrast here, we have a medical finding after apparently weighing medical evidence and that's an even step further because that is within the Board and the regional office. I mean, that's within their expertise to weigh that medical evidence in the first instance. I understand everything you just said. And, you know, it may well be that in this particular instance, the Veterans Court went too far on these facts. But what I'm asking you is to help the court try to devise a line of up to what point may the Veterans Court use this statutory authority of considering prejudicial error. And that's why I'm asking you to perhaps alter the fact pattern that we have in front of us in a way that you would imagine that that would be a permissible use. But, of course, your facts are different. I fully concede that if the Board had provided the complete factual predicate to the Veterans Court's harmless error analysis, that that does not raise Chenery issues. You know, the rule that we are advancing and we think is reflected in this court's, you know, decisions in Hensley, Mayfield, and Winters is that the Veterans Court cannot use harmless error to reach an entirely different ground that the Board had not considered. Well, I guess what I'm wondering is why wouldn't that be affirming on a different ground? If the ground that the Board ultimately settled on was the fact that, in its view, this was not an undiagnosed illness, and you need to be an undiagnosed illness to qualify, and the Veterans Court said, well, that's not a right understanding of either the regulation or the statute. But, nevertheless, I see that the Board also, in its considered judgment, made a very real fact-finding in interpreting the medical record evidence that there was only a single symptom here. So, the error, the legal error of the Board in its understanding of the statute and regulation is immaterial because the Veteran doesn't qualify for these benefits based on this other fact-finding. Wouldn't that be a separate ground, as you say? And so, therefore, that, in your view, based on your lead argument, as I understand it, would be impermissible application of this prejudicial error rule. It'd be a different ground, Your Honor, but it would not be on a ground that the Board had not considered. If the Board has brought its judgment to bear on an issue and provided the complete factual predicate, then we don't have a Chenery problem. So, you can do the prejudicial error analysis on a separate ground when that separate ground has all of the factual predicates developed in the record below. Is that the rule? That's right, Your Honor. When the Board has actually addressed that issue, you can do it. And here, we just don't have that. And, in fact, we don't even have briefing in the Veterans Court addressing this issue. The dissenting judge below noted that this is the latest in a line of aggressive harmless error analyses that this Court has applied. So, we would ask this Court to give effect to Congress's delegations of power to vacate the Veterans Court's decision and to remand to allow the Board to find medical facts in the first instance. And I just briefly want to touch on point two. And the Veterans Court dodged the validity of this regulation based on its flawed harmless error analysis. But, you know, we're left with an unavoidable language that the plain language of the authorizing statute 1117 conflicts with the regulation section 3.317A12. And we lay out the legislative history in our brief at pages 26 to 28 that Congress amended the statute in order to overturn this limitation. The Veterans Court didn't reach that question. Is that right? It didn't reach that particular question, Your Honor. Because it didn't meet you. Is that right? That's right. So, why would we reach it? Well, Your Honor, the Veterans Court did rely on the regulation 3.317. Different part of the regulation, though, than the one that you want to invalidate. Different, but I think, you know, by relying on one, you have to implicitly find that the other one doesn't apply. So, there's certainly some tension in having, you know, two conflicting provisions of a regulation and relying on one. You have to implicitly rely on the other. Why is that so? I didn't quite understand that. I mean, I didn't see anywhere in the Veterans Court's opinion where it's ruling based on another aspect of the regulation was by necessity had to bless the validity of the piece of the regulation you want to attack. I think by finding that the Board clearly erred, that the Veterans Court accepted the valid portion of the regulation, and that's 3.317.822. And, you know, by implication, it had to reject the contradictory provision 3.317.A12. And so this, you know, it's a fully brief question, and we think it's appropriate for a resolution here. But at the very least, since the parties seem to be in some agreement, a clear statement from this court that a diagnosis of medically unexplained illness qualifies for compensation would go a long way to ensuring that Veterans, like Mr. Tadlock, are getting the benefits they deserve. And I'll reserve my remaining time for rebuttal. Thank you. Okay. All right. Thank you. We'll hear from the Secretary. Ms. Bisak. Thank you, Your Honor. May it please the Court, the Veterans Court here applied its harmless error statutory mandate consistent with the guidance provided by both this court and the Supreme Court in recognizing that that mandate is very broad, and that mandate requires the Veterans Court to look to the entirety of the record, not simply the specific facts relied upon by the board in its own determination. So it's your view that the Veterans Court can engage in a de novo fact-finding exercise where it has to meticulously review all different pieces of the record and then analyze the record and then draw inferences from the record in a way that the VA never had before? And if it reaches a conclusion that the benefits ought to be denied for some completely unrelated reason that the VA relied on, that's okay under harmless error? Your Honor, I think there are absolutely bounds to the harmless error analysis, but they were nowhere near… Okay. So you agree with me what I just said is just out of bounds. That cannot possibly be the law for harmless error. Yes. To the extent, Your Honor, that the Veterans Court is attempting to apply raw, possibly contradictory medical data and perhaps create a diagnosis or something to that effect, I think that would certainly go beyond the bounds. But here, I would dispute that there was any fact-finding done. Okay. Well, where is the boundary finally? You led off by declaring that the scope of the harmless error inquiry is very broad. And, well, I would like to know where you really think the hard-bounded line is drawn. Your Honor, I think it is necessarily something of a fluid boundary, and I think that's borne out by the application both in this court and in other circuit courts of the APA harmless error standard. In some instances, the requirement is that it be clear to the reviewing body that the same result would have been affected. I think in this instance, Your Honor, there is a clear application of facts that are obvious and uncontested from the record and, frankly, from the board's opinion itself to the exact same question that the board itself was considering, and that was whether or not Mr. Tadlock's conditions constituted a MUCMI. Based on the exact same statute, the exact same language that the board was considering and that Mr. Tadlock was bound to demonstrate. Let's assume for the moment that this court, in its review of the board's decision, concludes that there's just no question that the board turned a complete blind eye to this question of whether Mr. Tadlock was suffering from overlapping symptoms and signs. That that wasn't the focus at all of the VA and all of its instructions for medical examinations to be conducted and what the medical examiners focused on and what the board focused on. Would it be okay under those circumstances, in your view, for the Veterans Court to say, well, I'm going to conduct my own review here, and when I look at everything in this record as it stands, as it's been developed, really for other purposes so far, I don't see anything here that clearly convinces me, the Veterans Court, that there was, in fact, a multi-symptom situation here for Mr. Tadlock. So I'm going to affirm the denial for that particular reason. Would that be an appropriate use of the prejudicial error rule? Your Honor, I think it could be, even under that situation. Why? What Mr. Tadlock highlighted as a problem with an expansive harmless error doctrine is the problem of fair notice or the concern that the Veteran is unaware of the elements that he isn't expected to address. Here, it has been clear from the beginning that what Mr. Tadlock is attempting to do is demonstrate that he is suffering from a MUCMI, which is defined by this statute, and all of the elements of the MUCMI are delineated in this statute. He was aware, the VA is aware of what that definition is and the various parts of it. So I think the record necessarily would be developed with the expectation that those are in mind. And so to the extent that the Board then reviews that record that was developed to demonstrate a MUCMI and can say, look, there is absolutely no either evidence or frankly even allegation here that there is some other symptom that should be considered beyond the pulmonary embolism. That clearly has, that element of multiple signs and symptoms within the statute that everyone was considering has not been met. So even though it wasn't at all the focus of the Board's decision, even though it wasn't the focus at all of all of those instructions to do multiple medical examinations, it's still okay for the Veterans Court to pull this trigger. I want to ensure that we're talking about a hypothetical situation. I'm talking about a hypothetical for now, but maybe secretly I also think it reflects the actual case. But let's just say for hypothetical purposes. I mean, to the extent that, yes, Your Honor, frankly, I think that in that situation where we are still, to use Mr. Hennis' phrase, talking about a single issue, which is whether or not the Veteran has demonstrated a MUCMI, and that there is a developed record to that question, even if the Board itself fails to address that question, I think, at least potentially, it is within the harmless error purview of the Veterans Court to look to see if that question has an obvious answer. This is Judge Lynn. Yes, Your Honor. Are you saying that whether the Veterans Court properly can use a prejudicial error analysis without violating Chenery depends on the extent to which the factual record is fully developed by the Board? I think that's sort of a way of looking at it, Your Honor. I think, again, the question has to be whether the Veterans Court, upon review of the record, can determine for itself that the outcome is essentially inevitable. Let's be precise. We're talking about who is going to do the fact-finding and whether it is appropriate for the Veterans Court to be doing fact-finding. I think we would both readily agree that that's not appropriate. Then the question is, well, when is it appropriate for the Veterans Court to use this prejudicial error analysis to perhaps conclude on a different basis that the same ruling would apply, but without making a fact-finding? I think we're both in agreement that it basically turns on whether the record has been fully developed and the fact-finding has been done by the Board. I think I would agree with that, Your Honor. I think the question becomes whether the Veterans Court can make a determination that there is no, essentially, a factual hole or some aspect of the question that is disputed or that requires more detail, perhaps another medical opinion, as I think was the case in Hensley. The Veterans Court could come to a different conclusion based on a different ground, provided that the factual record fully supports that. Yes, Your Honor. I think that's exactly what we're saying, and I think that's what this Court was saying in Newhouse in acknowledging the entire record. I would agree, but the problem, as I see it, is that I don't think that's this case, because I think the Veterans Court found itself without a fully developed record and made some fact-findings of its own. So I'm having trouble with that. I understood, Your Honor, and I would encourage the Court, probably near the end of my time, but I would encourage the Court to review the Board's decision. This is at the record pages 89 through, I think, about 102 or so. The Board clearly asked all of the medical experts, but certainly the third 2017 medical expert that it relied upon most heavily, about the existence or the likely existence of an unexplained multisymptom illness that the pulmonary embolism could be a symptom of. The 2017 medical opinion thoroughly reviews all of Mr. Tadlock's both symptoms and argument that the pulmonary embolism itself was the source of or derived from some, I think, hypercoagulation disorder is his theory, and discusses that likelihood and why. It certainly discusses the etiology of pulmonary embolisms, and etiology is a really key question in this statute that provides relief for certain MUCMEs. And then the Board itself goes on to fully adopt that opinion to address Mr. Tadlock's theory, again, that there's some underlying hypercoagulation disorder that caused his pulmonary embolism. It also accredits the Board or the examiner's findings that there are certain risk factors that Mr. Tadlock exhibited. The reason that Mr. Tadlock believes that this is an unexplained illness is because there was never a conclusion as to where the blood clot that caused the pulmonary embolism originated. We're running out of time. I've been patiently listening to you for the past two minutes, but I didn't hear you focus on anything in the Board opinion that relates to anything where we could say, aha, here's the Board saying that Mr. Tadlock lacks a multi-symptom situation with overlapping symptoms and signs. I think that the first part of that, the multi-symptom situation, is explicitly addressed. The Board did ask the examiners to consider whether or not there was an underlying unexplainable multi-symptom illness, and the examiner did address that. I agree, and I think this is where the Veterans Court got caught up, that there is not a final conclusory sentence saying, and also this multi-symptom… What is the right scope of the application of this prejudicial error rule that does not violate Chenery? I'll certainly try, Your Honor, and I think that in my discussions with Judge Lynn, the critical… I think it does, to some extent, come down to this question of fact-finding versus application of facts. I would agree that the Veterans Court… Sorry, if I may finish the final thought. Sure. The Veterans Court is not the appropriate body to be making, in the first instance, determinations about medical conditions, about whether or not a pulmonary embolism is diagnosed, for example. But to the extent that there is no identified hole, for lack of a better way to put it, in the factual record, that the Veterans Court is within its harmless error purview to review the existing facts and to try to ascertain whether or not, based on the existing facts within the entirety of the record, it is clear that a different decision would have been reached. And I understand I'm out of time. Thank you very much for the indulgence. Well, let's see. Judge Chen, do you want to pursue this any further? No, that's okay. Thank you. Okay. Judge Lynn, any more questions for Ms. Bisak? No, thank you. All right. Thank you. In that case, rebuttal for Mr. Hannes. Please excuse the interruption, Judge Newman. Mr. Hannes only has about 10 seconds left of rebuttal. Oh, no. You have your full rebuttal time. Sounds good. Thank you, Judge Newman. Just a couple quick points. I would first like to just start on the factual record. Neither before the Board nor in the medical opinion was this issue of overlapping signs and symptoms of focus whatsoever. So, you know, this case mirrors Hensley or Mayfield, where the factual record at this point is not well-developed enough for the Veterans Court to, you know, reach this. And, you know, there is a hole in the factual record. And even if there wasn't, it still requires weighing the medical evidence to make a determination on this. And the second thing I want to say is that, you know, Judge Chen, your questions about if the Board found one symptom, you know, would that be enough for the Veterans Court to affirm? And I would just like to point the Court to 60 Fed Reg 6660, in which the VA opined that a single symptom or sign may be sufficient in certain circumstances to establish entitlement under Section 3.317. So that's just another reason that this record is not ripe for reaching this issue. It needs to go to the original fact-finder, the Board. And one last question. I think we have said that under limited circumstances, the Veterans Court may do some fact-finding. Is that right? Within the context of its harmless error analysis, Judge Chen? Right. Yes. The Veterans Court can certainly do some fact-finding related to harmless error. But this Court has also established that there are limits on that fact-finding that it can do. And how would you articulate those limits? That if the Veterans Court goes outside the fact found by the Board, that it then has violated those limits. And I think, you know, if you look at this Court's… Isn't that the very nature of fact-finding? It is, but not when it's on an entirely different ground that the Board hadn't considered. So this is the same thing with the… You have to be… The Veterans Court at least has to be driving within the same lane that the Board decided the case. But in this case, the Veterans Court, you know, took an exit and went about 100 miles down the road to reach a question kind of out of thin air that the parties hadn't briefed and was never… You can write an opinion to talk about lanes and exits and freeways. I understand, but I mean, I think… I mean, this Court, you know, we're just asking the Court to apply, you know, the precedent in Hensley, Mayfield, and Winters. And in Mayfield, the Veterans Court decided an entirely different ground that the Board had not considered. In Winters, the Board was not concerned with the particular ground, so this Court vacated. And in Hensley, same thing. There was not a sufficient factual record, so the Veterans Court could not decide those facts in the first instance. Unless there are any questions, thank you. Any more questions for Mr. Hennis? No, thank you. Okay, thanks to both counsel. This case is taken under submission.